IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-00966-WYD

MICHAEL CANTWELL,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits.  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff slipped and fell on his back on the ice while carrying a toilet in January 2007.  His pain was exacerbated the next day when he reached overhead while standing on a ladder.  (Transcript ["Tr."], 156, 163, 166, 250.)  An MRI of the cervical spine in February 2007, "revealed diffuse degenerative changes, moderate at C4-5, C5-6 and C6-7, and mild elsewhere", "a right paracentral C7-T1 disc protrusion/extrusion . . .which may affect the exiting right C8 nerve root in the lateral recess and/or right neural foramen", and a "right posterior paracentral C6-7 disc protrusion" which possibly affected the exiting right C7 nerve root.  (*Id.* 156; *see also* 138-39, 152.)

The records in 2007 show that Plaintiff was suffering from pain and other problems from his cervical problems.  (*See* Tr. 157 – February 2007 report rating pain as 8/10 with 0% improvement since January and finding "strong evidence of chronic, longstanding and ongoing C8 radiculopathy", 165 – March 2007 report that Plaintiff's strength had deteriorated since accident", 176 – September 2007 report that there is no change in Plaintiff's right and upper neck extremity and that he has pain in his neck and right trapezius area; 172 – October 2007 report that Plaintiff felt he was getting worse, with pain in the neck and into his elbow.)  In December 2007, Plaintiff underwent an anterior cervical discectomy and fusion – a surgical procedure that removes a herniated disc and fuses the remaining cervical vertebrae for stabilization.  (*Id.* 257-65.)

In August 2007, Plaintiff protectively filed his application for disability insurance benefits.  (Tr. 74-78.)  Plaintiff, born in August 1958, was 48 years old on his alleged onset date, January 30, 2007, and the date his insured status expired, June 30, 2007.  (*Id.* 100).  Plaintiff has less than a high school education (*id.* 106), and worked in the relevant past as a plumber, a warehouse worker, and a delivery driver.  (*Id.* 102, 137.)

Plaintiff's claim was denied at the initial determination stage.  (Tr. 45-48.)  *See* 20 C.F.R. §§ 404.906 (2011).  Plaintiff timely requested a hearing, which was held before Administrative Law Judge ["ALJ"] Peggy S. Ball on September 10, 2009.  (*Id.* 20-41.)  On October 29, 2009, the ALJ issued a decision that Plaintiff was not disabled under the Act.  (*Id.* 8-19 and Finding 11.)

More specifically, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since January 30, 2007.  (Tr. 13, Finding 2.)  At step two, the

ALJ determined that Plaintiff's degenerative disc disease of the cervical spine and depression were "severe" impairments.  (*Id.* 13-14 and Finding 3.)  At step three, she determined that Plaintiff's impairments, alone or in combination, did not meet or equal a listed impairment.  (*Id.* 14-15 and Finding 4.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"] (Tr. 15-18), finding that Plaintiff could perform light work with occasional overhead reaching, that has a skill level of less than three (unskilled) and a sit/stand option.  (*Id.* 15, Finding 5.)  At step four, the ALJ found that Plaintiff's past relevant work exceeded his RFC.  (*Id.* 18, Finding 6.)  Accordingly, the ALJ proceeded to step five.

A vocational expert ["VE"] opined that a hypothetical person with Plaintiff's RFC could perform the requirements of representative occupations such as surveillance systems monitor (Dictionary of Occupational Titles ["DOT"] # 379.367-010).  (Tr. 19.)  The ALJ found that the VE's testimony was consistent with the DOT, and that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (*Id.* 18-19.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (*Id.* 11, 19, Finding 11.)

The Appeals Council denied Plaintiff's request for review on February 7, 2011.  (Tr. 1-4.)  The ALJ's decision thus became the final decision of the Commissioner (*id.*), and this appeal followed.  This Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Plaintiff argues that the RFC finding is legally deficient and is not supported by substantial evidence.  He also argues that the ALJ erred in rejecting the opinions of

treating physician D.K. Caughfield, M.D.  Plaintiff requests that the case be remanded to the Commissioner for an award of benefits or, alternatively, for further fact finding.  I address Plaintiff's arguments below.

## II.    ANALYSIS

### A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).

### B.    Whether Reversal of the ALJ's Decision is Appropriate

#### 1.    RFC Assessment

The ALJ stated that her RFC finding was "founded on the evidence", referring to Dr. Hattern's evaluation of Plaintiff in January 2006.  (Tr. 15.)  The ALJ also stated:

> The claimant's problems in overhead reaching are supported by the evaluation conducted by the Institute for Total Rehabilitation in February 2009 that found a significant deficit in the claimant's grip strength on the right. (Ex. 18F-2.) D.K. Caughfield, M.D., reported in March 2009 that the claimant had no ability to reach over his head with his right arm. (Ex. 20F-1.) Additionally, findings from this report also support the determination that the claimant should have a sit/stand option.
>
> Due to the claimant's mental impairment, the Administrative Law Judge has added the restriction of unskilled work.

(*Id.* 15-16.)

I agree with Plaintiff that the ALJ did not properly assess the RFC. I first find that the ALJ failed to conduct a function-by-function assessment of the RFC as required by Social Security Ruling 96-8p, 1996 WL 374184, at *3 (1996). This assessment is required before the RFC is expressed in terms of the exertional categories of "sedentary", "light", etc. *Id.* While the ALJ did address reaching and a sit/stand option, SSR 96-8p "requires separate consideration 'of seven strength demands: i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling.'" *Alexander v. Barnhart*, No. 02-5046, 2003 WL 22087496, at *28 (10th Cir. Sep. 2, 2003) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *5.)[1] The ALJ did not address most of these demands before finding that Plaintiff can perform light work.

I also find that the ALJ failed to state the evidentiary basis for the RFC finding. SSR 96-8p provides that the ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing *specific*

---

[1] I cite this and the other unpublished opinions in this Order because the cases have persuasive value with respect to material issues in the case. 10th Cir. R. 32.1(A).

*medical facts*." 1996 WL 374184, at *7. Where the ALJ, as here, fails to point to specific evidence supporting each conclusion, the RFC findings are not supported by substantial evidence and a remand is required. See *Southard v. Barnhart*, No. 02-7102, 2003 WL 21733145, at *3 (10th Cir. July 28, 2003) (unpublished); *Conkle v. Astrue*, No. 07-6104, 2008 WL 4726234, at *3 (Oct. 28, 2008) (unpublished).

Further, I find that the ALJ erred in finding that Plaintiff could perform work with occasional overhead reaching. She noted that Plaintiff's "problems in overhead reaching" are supported by, among other things, Dr. Caughfield's March 2009 report which found that Plaintiff "had no ability to reach over his head with his right arm." (Tr. 16.) The ALJ failed to explain, however, why she found that Plaintiff could occasionally reach overhead when Dr. Caughfield found that he could never do that. This was error. When the ALJ's RFC finding conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. Thus, the ALJ must explain any difference between the ALJ's RFC finding and the physician's opinion relied on by the ALJ. See *Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996). The failure to do so requires a remand "so that the ALJ can explain the evidentiary basis for h[er] RFC determination." *Haga*, 482 F.3d at 1208; see also *Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *17 (10th Cir. Jan. 21, 2011) (unpublished).

The Commissioner argues, however, that the ALJ's failure to explain her finding about overhead reaching is harmless error. He asserts in that regard that the functional limitations Dr. Caughfield adopted and the ALJ's RFC determination are mostly the

same, and that both the ALJ and Dr. Caughfield limited Plaintiff to "light" work. Further, the Commissioner asserts that even if the ALJ adopted Dr. Caughfield's limitation to no overhead reaching, Plaintiff's RFC would not preclude him from performing the job of surveillance system monitor because that job does not require any reaching (overhead or otherwise), citing to the vocational expert's testimony. (Tr. 39-40.)

I reject the Commissioner's argument, and in so doing note another problem with the ALJ's RFC analysis. While the Commissioner asserts that both the ALJ and Dr. Caughfield limited Plaintiff to lifting no more than 20 pounds occasionally, or "light work", Dr. Caughfield actually found based on the functional capacity assessment he adopted that Plaintiff's ability to perform light work was limited. (*See* Tr. 404 – "An FCE was obtained which did demonstrate limitations in function to a 15-25 pound lift depending on level of lift with shoulder level at 15 and knee level at 25", 386.) Thus, if Plaintiff is required to lift at shoulder level or above, he would be limited to sedentary work. *See* 20 C.F.R. § 404.1567(a) and (b) (sedentary work involves lifting no more than 10 pounds at a time; light work involves lifting no more than 20 pounds at a time and frequently lifting up to 10 pounds).

Based on the foregoing, a remand is required so that the ALJ can explain why she relied on Dr. Caughfield's opinion in one regard (in regard to overhead reaching, although her opinion was inconsistent with his), but ignored this other restriction regarding light work. If Plaintiff is found on remand to be limited to sedentary work, this may well mean that the job the ALJ found Plaintiff could do would not exist. Accordingly, I find that the harmless error analysis does not apply.

The ALJ also erred by discrediting Plaintiff's testimony with respect to his functional limitations based on an inconsistency in the description of the mechanism of injury to a non-treating source, Dr. Hattern.  (Tr. 17.)  The fact that Plaintiff gave inconsistent statements about the cause of his injury has no impact on what Plaintiff's functional limitations are and the evidence that must be considered with regard to same.  Further, the fact that Plaintiff gave inconsistent statements about the cause of his injury does not permit the ALJ to reject Plaintiff's allegations of pain and how this impacts his impairments since the medical evidence clearly substantiates ongoing chronic pain.  (*See, e.g.,* Tr. 343, 379-381, 404-07.)  Indeed, Plaintiff was diagnosed with a pain disorder with psychological and physical factors (*id.* 379-81), and no doctor ever discredited Plaintiff's allegations of pain.  The ALJ is not permitted to reject the physicians' medical findings regarding pain based on her own lay judgment or credibility assessment.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); SSR 96-7p, 1996 WL 347186, at *4 (July 2, 1996).  This must be addressed on remand.

Also on the issue of pain, I find that the ALJ failed to conduct a proper pain analysis.  While she cited to the proper test under *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987), she failed to evaluate the relevant factors or link her findings to the evidence.[2]  The record shows that Plaintiff had continuing chronic pain and that he

---

[2] The factors that should be considered when assessing a claimant's credibility, in addition to the objective medical evidence, include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medications, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the

repeatedly sought and tried different types of treatment and medication to help with the pain. The ALJ did not conduct the proper analysis on this issue, requiring a remand of the case. *See Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (finding that "[t]he ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication").

The ALJ also erred by selectively applying the evidence as to her RFC and credibility findings, citing only isolated portions of the record which she felt supported her findings and ignoring all the record evidence of continuing pain. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence"). For example, the ALJ stated, "[f]ollowing the December 2007 discectomy and fusion, the claimant was found to be doing well with improved arm pain, although he continued to complain about some numbness in his right arm (Ex. 7F-1)." (Tr. 16.) She also stated, "[a]ccorindg to his review of the medical record, Dr. Hattern noted that the claimant had told Dr. Sung in February 2008 that '...his arm pain was much better and his strength was almost back to normal.'" (*Id.* at 17) (quoting Ex. 15F-6.) "Similar references to improvement was made by the claimant to Dr. Bradley during the same

---

claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 347186, at *3.

month." (*Id.*)  The ALJ also noted that by January 2008, Plaintiff's condition, gross range of motion and strength were rated as stable and his gait was in normal limits, and by February 2008 he had good motor strength.  (*Id.* at 16-17)

      My review of the record shows that while Plaintiff initially improved after surgery, his condition then worsened and he continued to experience significant pain.  These findings were validated both by pain management physician Dr. Hopkins and by objective findings in the record.  *See, e.g.,* Tr. 408-09 – Dr. Caughfield's July 2008 report noting that Plaintiff said he had some initial improvements after surgery but his issues did not fully resolve and his arm pain persists, pain is "constant, shooting, stabbing . . ., burning and aching" with occasional headaches, pain is rated as a 7-8/10, that Plaintiff "tried some pharmacotherapy with suboptimal benefits", and that the impression after making objective findings was "[c]hronic cervical pain with radiculopathy now with neuropathic pain and some myofascial features"; 407 – October 2008 report of Dr. Caughfield that Plaintiff continued to struggle with pain and had worsened sleep, exam shows him to have multiple pain behaviors, impression: Chronic pain with radiculopathy and neuropathic pain"; 406 – Dr. Caughfield's November 2008 report noting Plaintiff cannot sleep and that pain, depression and anxiety were worsening; 379-81 - Dr. Hopkins' November pain evaluation finding that Plaintiff has a "chronic pain syndrome" with psychological and physical factors; 462 – Dr. Caughfield's August 2009 report finding "[c]hronic pain with cervical disc disease" and depression; 448 – Dr. Sung's October 2009 report finding "C5-6 cervical degenerative disc disease" per MRI and x-rays" and noting that Plaintiff has continued neck and right arm pain; and

460 – Dr. Caughfield's October 2009 report noting pain wise that Plaintiff was having increasing right arm symptoms and diagnosing cervical disc disease with pseudoarthrosis, persistent arm pain and evidence of radiculopathy.

It is hard to believe from the foregoing evidence that the ALJ so cavalierly dismissed Plaintiff's complaints of pain in assessing Plaintiff's RFC.  Every doctor that saw Plaintiff agreed that he had pain, and the many treatments Plaintiff tried to treat the pain were unsuccessful.  Further, because Plaintiff had a pain disorder with psychological as well as physical factors, the complaints of pain could not simply be discounted because "some exaggeration was noted in the claimant's complaints" or because the mental impairment influenced his pain perception.  (Tr. 17.)  *See Winfrey*, 92 F.3d at 1021; *Fuller*, 2011 WL 209527, at *9.

Finally on remand, the ALJ must clear up the inconsistency in her decision as to the type of work Plaintiff can do.  In the RFC finding, the ALJ limited Plaintiff to work involving a skill level less than three (Tr. 15, Finding 5).  However, in the body of the decision, the ALJ indicates she was limiting Plaintiff to unskilled work.  (*Id.* 16).  While the Commissioner asserts that a skill level less than three and unskilled work are basically the same, I believe that would be an issue for a vocational expert to decide.  To avoid having to address the issue with a VE, the ALJ should clarify this on remand.

        2.     <u>Weighing of Treating Physician's Opinions</u>

I also find that the ALJ erred by not stating what weight she assigned to the medical opinions in the case.  I first address Plaintiff's treating physician Dr. Caughfield.  It is unclear from the ALJ's decision what actual weight was given Dr. Caughfield's

opinions and medical findings; however, it appears that the ALJ gave many of Dr. Caughfield's opinions no weight. The law is clear that "'an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'" *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quotation omitted).

Further, there is no indication in the record that the ALJ considered whether Dr. Caughfield's opinions were entitled to controlling weight or what other amount of deference should be given to Dr. Caughfield's opinions, including his adoption of the functional limitation assessment found at Exhibit 18F.  (Tr. 43.)[3]  This is reversible error that requires a remand. That is because in evaluating the medical opinions of a claimant's treating physician, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  The initial determination the ALJ must make is whether a treating physician's medical opinion is "conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques

---

[3] The Commissioner argues that Plaintiff mistakenly attributes the functional capacity evaluation at Exhibit 18F to Dr. Caughfield, but the assessment was actually completed by Mr. Briansky, OTR. (*Id.* 384-94.) The Commissioner asserts that since Mr. Briansky is not a medical source, the ALJ was not required to give this opinion weight. I reject this argument. First, the ALJ did not give this as a reason to reject the functional limitations in that assessment. Accordingly, it is not proper to consider that argument. *Robinson*, 366 F.3d at 1084.  Second, it appears that Dr. Caughfield accepted the assessment in its entirety as to the scope of Plaintiff's impairments. (Tr. 404, 411.)

and is not inconsistent with other substantial evidence in the record." *Id.* "Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. "If this is not done, a remand is required." *Id.*

In *Krauser*, the Tenth Circuit found that the ALJ's assessment of a treating physician's opinion was "patently inadequate for the distinct reason that it ends halfway through the required two-step analysis: the ALJ simply concluded that 'Dr. Lambert's opinion ... cannot be given controlling weight' and then *said no more about it." Id.* (emphasis in original). Here, however, the ALJ did not even discuss or consider the first step – whether Dr. Caughfield's opinions and medical findings, in whole or in part, are entitled to controlling weight, let alone the second step. Further, she did not consider the relevant factors in determining what weight to give Dr. Caughfield's opinions and did not state what lesser weight, if any, she assigned those opinions.

The ALJ's rejection of Dr. Caughfield's opinions regarding Plaintiff's pain and impairments is an improper substitution of her own judgment for that of the doctor in regard to what the medical evidence means. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of

contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion.'") (quoting *McGoffin*, 288 F.3d at 1252).

I also find that the ALJ erred by failing to state what weight she gave the opinions and medical findings of the other medical providers in the case. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1210 (10th Cir. 2004); *Doyle v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). To the extent that the ALJ gave weight to the findings of Dr. Hattern over those of Dr. Caughfield, this was error since the ALJ did not first decide whether to give controlling weight to Dr. Caughfield's opinions or what other lesser weight they should be assigned. This also must be addressed on remand.

I also find other problems with the ALJ's reliance on Dr. Hattern's opinion. His medical evaluation was made in connection with a claim under the Colorado Worker's Compensation Act. However, the ALJ rejected a similar evaluation by Dr. Leppard because "the Workers Compensation program does not determine disability in the same manner as disability under the Social Security Act." The Tenth Circuit has held that an ALJ cannot summarily reject a physician's reports on the basis of inadequate or inapplicable findings when they are comparable to reports the ALJ relied on. *Teter*, 775 F.2d at 1106. I further note in regard to Dr. Hattern's evaluation that he did not make detailed findings regarding Plaintiff's functional limitations, stating opinions only as to lifting and Plaintiff's head position. (Tr. 367.) He specifically noted that if more exact recommendations are needed, then a functional capacity evaluation should be scheduled. (*Id.*) Again, these are issues that must be considered on remand.

3.      Plaintiff's Request for an Award of Benefits Rather than a Remand

Finally, I deny Plaintiff's request for an immediate award of benefits rather than remand.  Reversal and remand for immediate award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied."  *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quotations omitted).  In this case, further fact finding is necessary as set forth in this Order, and the case is remanded to the Commissioner on that basis.

III.    CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly assess Plaintiff's RFC and did not properly weigh the medical evidence, including the treating physician's opinions.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 20, 2012

                                                BY THE COURT:

                                                s/ Wiley Y. Daniel
                                                Wiley Y. Daniel
                                                Chief United States District Judge